**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-CV-2496-MEH

CHRISTOPHER JONES, an individual

       Plaintiff(s),

v.

LEXISNEXIS RISK SOLUTIONS, INC.,

       Defendant.

---

## RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Christopher Jones ("Plaintiff" or "Mr. Jones"), by and through his undersigned counsel, responds to Defendant LexisNexis Risk Solutions, Inc's ("LexisNexis") motion for summary judgment. As grounds for denying the motion, Plaintiff states as follows.

### I.    INTRODUCTION

In February 2020, Mr. Jones went to a T-Mobile store to get a new cell phone. He was shocked when the salesman came back and told him that he could not qualify to buy a cell phone because of his LexisNexis report. Mr. Jones asked who the heck is LexisNexis, and the T-Mobile employee told him that LexisNexis is a credit bureau. Embarrassed by his inability to qualify to purchase a cell phone from T-Mobile, Mr. Jones ordered a copy of his 110-page LexisNexis credit report, and much to his surprise, LexisNexis was reporting someone else's bankruptcy filing on his report, in addition to a host of false information, including that he had five different social security numbers, lived with someone named Lisa Barrera, and lived in Texas. Mr. Jones then highlighted every single inaccuracy, and mailed it certified to LexisNexis, along with a dispute letter asking LexisNexis to fix all the many errors that were preventing him from obtaining even a modest cell phone. LexisNexis would not even respond to him, and completely blew him off. Just

three months before Plaintiff's dispute letter, LexisNexis's attorneys in this case warned the credit reporting industry that one of LexisNexis's competitors got spanked by a jury for $3.3 million in punitive damages in an individual mixed file case for doing the exact same thing that LexisNexis did in this case—inaccurately connecting public records information to persons with common names, even when the social security numbers don't match.  (Ex. 1).  In addition to ignoring Plaintiff, LexisNexis apparently ignored its own attorneys' sound advice.

There is a law that prohibits and punishes such reckless behavior—the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. (the "FCRA").  The purpose of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b).  Congress described this as a "grave responsibility" marked with obligations of "fairness, impartiality, and a respect for the consumer's right to privacy."  15 U.S.C. § 1681(a)(4).  Against these requirements, LexisNexis mixed Plaintiff's information with multiple other individuals named "Christopher Jones", sold that information to third parties without a permissible purpose, failed to reinvestigate Plaintiff's disputes, failed to provide a copy of his file to Plaintiff, and caused Plaintiff damages.

Plaintiff brought this action under four separate and distinct sections of the FCRA.  First, LexisNexis violated the 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to ensure maximum possible accuracy in reports made about Plaintiff.  (Compl. ¶ 14(a)).  Second, LexisNexis violated 15 U.S.C. § 1681i by failing to conduct a reasonable re-investigation of disputed information. (Compl. ¶ 14(b)).  Third, LexisNexis violated 15 U.S.C. § 1681g by failing to provide a copy of Plaintiff's credit file to him.  (Compl. ¶ 14(c)).  Fourth, LexisNexis violated 15 U.S.C. § 1681b by disclosing consumer reports about Plaintiff to third parties who had ordered reports on a different Christopher Jones.  (Compl. ¶ 14(d)).  Each of these sections is a separate, distinct, and independent violation of the FCRA.

LexisNexis asserts that it is entitled to summary judgment. LexisNexis claims to have "prepared Plaintiff's consumer report using a proprietary 'dynamic' matching process which 'paints an extremely accurate picture that accounts for identity changes over time.'" (Mot. at 4, Ex. E). Despite claiming that its procedures "paint an extremely accurate picture", LexisNexis does not claim it is entitled to summary judgment because it complied with the law. And LexisNexis does not claim that it responded to Plaintiff's dispute, sent him his credit file, or provided a credit report with a permissible purpose. Instead, LexisNexis claims it is entitled to summary judgment because mixing Plaintiff's credit file with other individuals of the same name caused him no damages and was not willful. These arguments lack merit. Plaintiff suffered significant emotional distress when LexisNexis willfully and recklessly violated the FCRA. LexisNexis is not entitled to summary judgment.

## II.     RESPONSE TO LEXISNEXIS'S UNDISPUTED FACTS

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

7. Denied. The document attached to support this fact is not actually the procedures used to credit consumer reports. Instead, it is an overview of the process that does not contain any details about how LexisNexis creates consumer reports. (Ex. E).

8. Denied. The document attached to support this fact is not actually the procedures used to credit consumer reports. Instead, it is an overview of the process that does not contain any details about how LexisNexis creates consumer reports. (Ex. F).

///

///

///

**III.    ADDITIONAL UNDISPUTED FACTS**

1. Plaintiff is the Regional CEO, North America & Asia Pacific, for Anthesis Group, a global consultancy that advises Fortune 500 companies on reducing carbon emissions and achieving environmental sustainability. (Affidavit of Christopher <u>David</u> Jones ¶ 5).

2. Plaintiff is a professional and responsible member of society with sound finances and no history of poor credit. (Jones Aff. ¶¶ 3-4).

3. In February of 2020, Plaintiff attempted to buy a cell phone at T-Mobile and was turned down due to information contained in a LexisNexis report. (Jones Aff. ¶ 9).

4. Plaintiff had never heard of LexisNexis at the time that he was turned down for something as basic as buying a new cell phone. (Jones Aff. ¶ 10).

5. Plaintiff was humiliated to be turned down for a cell phone, something that it seems like almost every person in America has. (Jones Aff. ¶ 11).

6. After being turned down on the right to buy a cell phone, Plaintiff ordered his LexisNexis report. (Jones Aff. ¶¶ 10, 12).

7. The credit file that LexisNexis was 110 pages long and contained a host of inaccurate information about Plaintiff. (Jones Aff. ¶ 12).

8. On March 17, 2020, Plaintiff drafted a letter with attachments disputing information contained in a credit report prepared by LexisNexis (the "<u>Dispute Letter</u>"). (Jones Aff. ¶ 16, (Ex. 2, p.1).

9. The Dispute Letter highlighted over a hundred inaccuracies in LexisNexis's credit report. (Ex. 2, p.2-111). These inaccuracies included that:

    a. Plaintiff has filed for bankruptcy;

    b. Plaintiff has multiple social security numbers;

    c. Plaintiff has multiple different middle names;

    d. Plaintiff has multiple different birthdates;

    e. Plaintiff has or had insurance for vehicles that did not belong to him;

    f. Plaintiff lived in multiple different states with multiple different people that he didn't even know; and

    g. Plaintiff is married, related, or affiliated with someone named "Lisa Berrera"; any

    h. many others.

  10. The Dispute Letter requested LexisNexis to provide LexisNexis's file to Plaintiff. (Ex. 2, p.1).

  11. On April 3, 2020, Plaintiff provided the Dispute Letter to the United States Postal Service for delivery to LexisNexis by two-day delivery with tracking. (Ex. 3).

  12. On April 6, 2020, LexisNexis received the Dispute Letter. (Ex. 3).

  13. To date, LexisNexis has not investigated any of the disputes listen in the Dispute Letter. (Jones Aff. ¶ 17).

  14. To date, LexisNexis has not provided a copy of Plaintiff's file to him. (Jones Aff. ¶ 22).

  15. LexisNexis improperly provided Plaintiff's credit report to Carvana, Allstate, Liberty Mutual, Progressive, and American Family, and Plaintiff highlighted these inaccuracies in his dispute. (Ex. 2, p. 78-80).

  16. LexisNexis provided credit reports on Plaintiff to Carvana[1], T-Mobile, Esurance, Axcess Financial Services, and American Express containing the false information about Plaintiff contained within his credit file. (Jones Aff. ¶ 21, 22).

  17. By creating a credit report containing false information about Plaintiff, failing to respond to Plaintiff's dispute, failing to provide a copy of his file to Plaintiff, and disclosing Plaintiff's credit report without a permissible purpose, LexisNexis caused Plaintiff to experience emotional distress as described in Plaintiff's affidavit. (Jones Aff.).

---

[1] Prior to LexisNexis improperly disclosing Plaintiff's credit report to Carvana, LexisNexis had previously provided a credit report to Carvana for use in a transaction involving Plaintiff, but that report contained false information.

## IV. LEGAL STANDARD

### A. Standards Applicable To Motions For Summary Judgment.

LexisNexis's motion rests upon the alleged lack of evidence to support Plaintiff's claims. A party who does not bear the ultimate burden of proof may seek summary judgment based upon an alleged lack of evidence. Talley v. Time, Inc., 923 F.3d 878, 893 (10th Cir. 2019). "If the movant meets this initial burden, the burden then shifts to the nonmovant to set forth specific facts from which a rational trier of fact could find for the nonmovant." Talley, 923 F.3d at 893-94. "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." Cassara v. DAC Servs., 276 F.3d 1210, 1212 (10th Cir. 2002) (citation omitted). "When applying this standard, [the court] view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the nonmoving party." Talley, 923 F.3d 878 at 893.

### B. Standards Applicable To FCRA Claims.

On summary judgment on a 15 U.S.C. § 1681e(b) claim, "a plaintiff must *minimally* present some evidence from which a trier of fact can infer that the consumer reporting agency failed to follow reasonable procedures in preparing a credit report." Stewart v. Credit Bureau, Inc., 734 F.2d 47, 51 (D.C. Cir. 1984) (emphasis added). "The reasonableness of a credit reporting agency's procedures is normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question." Gomez v. Kroll Factual Data, Inc., 20 F. Supp. 3d 1103, 1107-08 (D. Colo. 2013) (quotations omitted); Cortez v. Trans Union, LLC, 617 F.3d 688, 709 (3d Cir. 2010). "The reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases." Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995).

## V. ARGUMENT

LexisNexis incorrectly claims that it is entitled to summary judgment for three reasons. First, LexisNexis claims that Plaintiff has suffered no damages. But Plaintiff has suffered damages, and Plaintiff has met his burden to demonstrate an inference of this element of his case.

Second, LexisNexis claims that there is no evidence that LexisNexis recklessly violated the FCRA when it combined Plaintiff's credit file with other individuals named Christopher Jones; failed to reinvestigate his disputes; failed to provide Plaintiff with his credit file; and disclosed his information improperly. LexisNexis argues that its procedures are reasonable without actually providing these procedures to the Court. But again, there is sufficient evidence to support the inference that LexisNexis recklessly violated the FCRA for each of these violations. Because the evidentiary record indicates that Plaintiff has met his minimal burden of demonstrating the inference of the presence of each element of the case, LexisNexis is not entitled to summary judgment.

### A. Plaintiff Has Suffered Damages.

LexisNexis incorrectly claims that Plaintiff has not suffered any damages. Plaintiff is entitled to his actual damages for LexisNexis's willful and negligent violations of the FCRA. 15 U.S.C. §§ 1681n(a)(1)(A); 1681o(a)(1).[2] Those damages include damages for emotional distress. Llewellyn v. Allstate Home Loans, Inc., 711 F.3d 1173, 1182-83 (10th Cir. 2013). In the context of a motion for summary judgment, a plaintiff's affidavit is sufficient to defeat the motion if the affidavit describes the plaintiff's emotional distress in sufficient detail and does not rely on conclusory statements. Llewellyn, 711 F.3d at 1182. Further, a plaintiff is "not required to produce evidence to corroborate his detailed and specific testimony in order to survive summary judgment." Id. at 1183. Therefore, Plaintiff may defeat LexisNexis's argument that Plaintiff has suffered no damages by providing a sufficiently detailed affidavit of his emotional distress.

Here, Plaintiff has endured significant emotional distress as described in his affidavit. As a successful and responsible member of society, with a history of professional and personal success, it was emotionally traumatizing to be denied the right to buy a cell phone with T-Mobile, and further traumatizing that the person causing the credit denial—LexisNexis—would do nothing

---

[2] Actual damages are not an element of a claim under 15 U.S.C. § 1681n(a)(2). Yohay v. Alexandria Emps. Credit Union, Inc., 827 F.2d 967, 972 (4th Cir. 1987) ("Actual damages are not a statutory prerequisite to an award of punitive damages under the Act.")

to correct its error. These manifestations of emotional distress are consistent with the allegations that the Tenth Circuit relied upon when reversing summary judgment in Llewellyn.

LexisNexis overlooks Llewellyn's holding and claims that "plaintiff has failed to bring forward even the famously insufficient 'mere scintilla' of evidence." (Mot. at 6). In an attempt to illustrate its point, LexisNexis points to Plaintiff's discovery responses. (Mot. at 7). Specifically, LexisNexis claims that Plaintiff has no medical records of his emotional distress, no witnesses of his emotional distress, and no corroboration of his emotional distress. (Mot. at 7). This is irrelevant. Plaintiff is "not required to produce evidence to corroborate his detailed and specific testimony in order to survive summary judgment." Llewellyn, 711 F.3d at 1183. Instead, Plaintiff's own, sworn testimony is sufficient to submit the issue to a jury.

Perhaps to deny the fate that Llewellyn portends for LexisNexis, LexisNexis then asks this Court to weigh the evidence on a motion for summary judgment. LexisNexis contends that the absence of corroboration "weighs heavily against Plaintiff." (Mot. at 7). But that is not the Court's function on a motion for summary judgment. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). And under Llewellyn, the Plaintiff demonstrates that there is a genuine issue for trial by providing a sufficiently detailed affidavit demonstrating the emotional distress that Plaintiff has suffered. Weighing the evidence is for the jury, and the jury will decide the amount of damages. Plaintiff has met that burden here, and LexisNexis is not entitled to summary judgment.

  **B.**  **LexisNexis Has Willfully Disregarded Its Obligations Under The FCRA.**

LexisNexis claims that it did not willfully violate the FCRA when it created a consumer report on Plaintiff with false information belonging to other people; failed to reinvestigate the disputed information; failed to provide Plaintiff with a full copy of his file; and sold Plaintiff's credit information to third parties without a permissible purpose. "'A willful violation is either an intentional violation or a violation committed by an agency in reckless disregard of its duties under the FCRA.'" Llewellyn, 711 F.3d at 1183 (quoting Birmingham v. Experian Info. Solutions, Inc.,

633 F.3d 1006, 1010 (10th Cir. 2011)). "Recklessness is measured by an objective standard: action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." Llewellyn, 711 F.3d at 1183 (citations and quotations omitted). "A company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Id. at 1183-84 (quotations and citations omitted).

The crux of LexisNexis's argument is that it has reasonable procedures to ensure the maximum possible accuracy of consumer reports. Surprisingly, LexisNexis does not actually attach those procedures to its motion. Instead, it relies on an interrogatory response that contains only a high-level description of its proprietary matching process. This does not satisfy LexisNexis's burden to prove that the objective reasonableness of LexisNexis's procedures is beyond question. Further, LexisNexis's interrogatory response pertains only to LexisNexis's procedures for creating consumer reports and complying with 15 U.S.C. § 1681e(b). The response says nothing of LexisNexis's compliance with 15 U.S.C. §§ 1681i, 1681g, or 1681b. Consequently, LexisNexis has not put forth any evidence that it even has procedures for complying with the FCRA on three-quarters of Plaintiff's claims.

        **1.     LexisNexis violated the FCRA by preparing a consumer report about Plaintiff with false information.**

LexisNexis is not entitled to summary judgment that its procedures for preparing consumer reports are objectively reasonable beyond question. "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). To prevail on a claim under Section 1681e(b), "a plaintiff must establish that (1) the consumer reporting agency failed to follow reasonable procedures to assure the accuracy of its reports; (2) the report in question was, in fact, inaccurate; (3) the plaintiff suffered an injury; and (4) the consumer reporting agency's failure caused the plaintiff's injury." Cassara v. DAC Servs.,

276 F.3d 1210, 1217 (10th Cir. 2002). "Reasonable procedures are those that a reasonably prudent person would undertake under the circumstances." Gomez v. Kroll Factual Data, Inc., 20 F. Supp. 3d 1103, 1107 (D. Colo. 2013) (quotations omitted). In Gomez, Judge Martinez held that whether the consumer reporting agency's procedures were reasonable was a question for the jury when the agency did not cross check the accuracy of its reports using other pieces of information available to the consumer reporting agency. Gomez, 20 F. Supp. 3d at 1107. Thus, LexisNexis must demonstrate that its procedures are reasonable beyond question and use prudent controls for inaccuracy like cross checking for conflicting information.

In part II of its motion, LexisNexis does not dispute that Plaintiff's consumer report was inaccurate. It was. Instead, LexisNexis claims that it maintains reasonable procedures to ensure the maximum possible accuracy of consumer reports. Remarkably, LexisNexis contends that its procedures are reasonable *without actually attaching those procedures*. Rather than provide the Court with its actual procedures, LexisNexis uses only its own interrogatory response describing the procedures.

Even LexisNexis's own, glowing description of its procedures is insufficient to prove that the procedures are reasonably adapted to assure the maximum possible accuracy in creating a credit report for Plaintiff. For example, LexisNexis claims that it "scores" the data to determine what information is included in a consumer report. (Ex. E). Rather than tell the Court what "score" is necessary to include a data point in a particular consumer report, or how the score is generated, LexisNexis says nothing. LexisNexis does not even tell the Court what the scale of scores is. The score could be one out of a hundred or one out of a million. Nobody knows. And LexisNexis does not explain how its "Scalable Automated Linking Technology" can result in two different people with different names, different dates of birth, and different social security numbers can have information in the same credit report. LexisNexis does not claim its procedures take even the modest step of excluding conflicting information, a step that Judge Martinez held "[a] juror could conclude that a reasonably prudent person would take . . . to assure the maximum accuracy of consumer reports." Gomez, supra. LexisNexis says nothing about how its patented "Scalable

Automated Linking Technology" screens for overlapping identifiers that are mismatches. LexisNexis does not describe any procedure where it screens for a false positive i.e. overlapping information that is not, in fact, overlapping. LexisNexis's failure to describe how it avoids mismatches is a concession that it has none.

Despite LexisNexis's claim that its procedures "paint an extremely accurate picture", LexisNexis's file on Plaintiff contains nearly more inaccurate information than accurate information. According to LexisNexis, Plaintiff has five different social security numbers; three different middle names; has a last name of "Nina"; filed bankruptcy in Texas; is married to Mia Jones; lived in Mesquite, Texas; lived in Balch Springs, Texas; lived in Plano, Texas; lived in Lexington, Kentucky; lived in Norman, Oklahoma; lived in West Palm Beach, Florida; tried to buy a car at Carvana in Tempe, Arizona; lived with Lisa Barrera in Boulder, Colorado and Grand Prairie, Texas; has had two insurance claims, and drives a Chevrolet Camaro Z28. (Ex. 2). Either Plaintiff is a nomadic lothario with multiple pseudonyms, bad finances, multiple social security numbers, trouble getting insurance, and drives a Camaro, or LexisNexis's procedures do not paint an extremely accurate picture of consumers.

### 2. LexisNexis's actual procedures do not ensure the maximum possible accuracy of credit reports.

Having failed to attach its actual procedures to the motion for summary judgment, Plaintiff anticipates that LexisNexis will attach them to the reply. Those procedures are no more specific than the interrogatory response and do not demonstrate that they are designed to ensure the maximum possible accuracy of consumer reports. In discovery, LexisNexis produced a document entitled "Data Accuracy Policy for Consumer Reports". (Ex. 4). The vast majority of this policy concerns data integrity, or in LexisNexis's own words, "data that accurately reflects what they purport to provide." (Ex. 4 at LNRS_CJones000113). The policy does not mention mixed files or LexisNexis's policies for combining the files of people with common names.

In the entirety of LexisNexis's nine-page policy, only two paragraphs relate to data matching. (Ex. 4 at LNRS_CJones000113-14). These two paragraphs state only that LexisNexis links data across multiple data records using "proprietary processes that have been refined over the course of nearly two decades." (Id.). In its own policy, LexisNexis then characterizes itself as "a recognized industry leader in identity linking technology . . .." The policy provides *no description* of its "proprietary process", what has been done to refine that process, or even what that process is. (Id.). Refining the process could mean that LexisNexis has decided to include more information leading to more inaccuracy. LexisNexis doesn't say.

The policy recognizes that "[i]t is important that this process continue to link data to a Consumer accurately and to consider many factors, including the uniqueness of identity elements and source consideration." (Id.). Again, the policy provides no description of what is meant by "many factors" or the "uniqueness of identity elements and source consideration". The policy goes on to state that "restrictiveness" is measured in terms of "precision" and "recall". Precision is specifically defined as LexisNexis's measure of accuracy, but the policy does not state what level of "precision" LexisNexis requires for its consumer reports. The policy acknowledges, however, that there is a specific level of "precision" that is acceptable to LexisNexis, and this level of "precision" can only be lowered with approval of the LexisNexis Legal Department.[3] (Id. at LNRS_CJones000114). In sum, LexisNexis has a standard of accuracy, that standard can be changed, and LexisNexis will not disclose that standard. The Court cannot conclude, as a matter of law, that the supposed procedures for ensuring the maximum possible accuracy of credit reports meets the FRCA's requirement because LexisNexis refuses to disclose what level of accuracy it actually imposes on its credit reports.

### 3. LexisNexis improperly characterizes Plaintiff's claims as requiring an unobtainable standard of accuracy.

LexisNexis claims that Plaintiff's claims fail because requiring a "9 for 9" social security number match is an "unrealistic ipse dixit" and an impossible standard for LexisNexis—a company

---

[3] Interestingly, the level of precision could apparently be *increased* without the approval of the legal department.

legally bound to ensure the maximum possible accuracy of consumer reports—to comply with. To make this argument, LexisNexis relies on the undisclosed, inadmissible, and hearsay opinion of the "Professional Background Screening Association" (the "PBSA"). Specifically, LexisNexis points to the PBSA "Background Screening Agency Accreditation Program – Standard" as the standard for what constitutes a reasonable procedure for ensuring the maximum possible accuracy of consumer reports. (Exs. K, L). As is clear from the exhibits' lack of bates labelling, these two documents were never disclosed to Plaintiff. On a motion for summary judgment, undisclosed evidence is not permissible. Fed. R. Civ. P. 37(c). Further, Exhibit L purports to offer the expert opinion that a two-identifier match is a reasonable procedure to ensure maximum possible accuracy of consumer reports. This expert opinion was not disclosed in accordance with Fed. R. Civ. P. 26(a)(2) and is inadmissible. Id. Last, the opinion offered in Exhibit L is a mere conclusory opinion that is not admissible on a motion for summary judgment. Matthiesen v. Banc One Mortg. Corp., 173 F.3d 1242, 1247 (10th Cir. 1999) ("the testimony of an expert can be rejected on summary judgment if it is conclusory . . ."). Accordingly, LexisNexis may not rely on Exhibits K and L to contend it is entitled to summary judgment.

Even if LexisNexis can use this undisclosed expert opinion in its motion, LexisNexis still has not demonstrated that its procedures for ensuring the maximum possible accuracy of consumer reports are beyond question reasonable. First, the PBSA report says nothing of LexisNexis's procedures. The PBSA report says only that one match plus a partial match ensures the maximum possible accuracy of consumer reports. (Mot. at 12 fn. 2). If this is a reasonable procedure—it's not—LexisNexis has not presented the Court with any evidence that it follows this procedure. Instead, LexisNexis offers only its interrogatory response that it links "records with intersecting data points" using LexisNexis's "Scalable Automated Link Technology" and scores the data "to determine what information is ultimately included in a consumer disclosure provided to a user." (Ex. E). This interrogatory response—the only evidence that LexisNexis presents of its procedures—does not state that LexisNexis complies with the PBSA "standard".

Defendant's competitor lost this exact argument at the 11th circuit. <u>Williams v. First Advantage LNS Screening Sols., Inc</u>., 947 F.3d 735, 739 (11th Cir. 2020) (rejecting argument that matching only 2 indicators is reasonable, and affirming willful violation of FCRA). Notably, this is the same case Defendant's attorneys blogged about and warned the industry about. Ex. 1. Following the PBSA procedures does not ensure the maximum possible accuracy of consumer reports. Based on the PBSA report, LexisNexis claims that two matching identifiers are sufficient to assure maximum possible accuracy of a consumer report, so long as one identifier is the first and last name and the other identifier is multiple other partial matches of date of birth, social security number, driver's license number, passport number, or any address. For example, a procedure that matches Plaintiff with another "Christopher Jones" is reasonable so long the other "Christopher Jones" shares the same birth month and lived in the same state. It strains credibility to argue that matching Plaintiff with every other "Christopher Jones" who was born in December and lived in Colorado at any point, ensures maximum possible accuracy of a consumer report. But that is exactly what LexisNexis did. In its file, LexisNexis matched Plaintiff with "Chris Jones", who was born on a different day in December of 1971 and lived at a different address in Boulder. (Ex. 2 at 14). Similarly, LexisNexis matched Plaintiff with "Chris S. Jones", who was born on the same day as Plaintiff but lived in Norman, Oklahoma. (Ex. 2 at 15). And LexisNexis matched Plaintiff with "Christopher S. Jones", who was born on the same day as Plaintiff, but has a different social security number and lives in Mesquite, Texas. LexisNexis made all these matches despite having conflicting information that would rule out these matches as accurate. These matching criteria, whether by the LexisNexis "Scalable Automatic Linking Technology" or the PBSA "name match plus multiple partial match criteria", do not ensure maximum possible accuracy. Instead, they ensure maximum possible information.

Third, the PBSA standard is objectively unreasonable because it does not account for false positives. As Judge Martinez held in <u>Gomez</u>, crosschecking information contained in a consumer report against other information available to the consumer reporting agency is a step that a reasonably prudent person would take to ensure the maximum accuracy of consumer reports.

Gomez, 20 F. Supp. 2d at 1107-08.  LexisNexis does not argue that the PBSA standard requires this reasonably prudent step or that LexisNexis performs this reasonably prudent step.  Rather, LexisNexis contends that a first-and-last name match with multiple partial matches with no cross-checking is objectively reasonable even if the middle names, social security numbers, and dates of birth are different.  As is apparent from Plaintiff's file, the LexisNexis approach results in hundreds of pieces of inaccurate information being linked together.  Without cross-checking, the LexisNexis procedure results in inaccuracy that is otherwise avoidable.

Fourth, LexisNexis's characterization of this case as an unrealistic ipse dixit is misplaced.  Of the five different social security numbers in Plaintiff's file, *three are a zero for nine match*, one is an eight for nine match, and one is Plaintiff's.  A one for nine match would be an improvement over LexisNexis's proffered standard.  Requiring a one for nine match would have eliminated "Christopher Stephen Jones" from Plaintiff's credit file.  So would have requiring the middle name to match.  But rather than requiring that at least one digit of a social security number match, LexisNexis included another person's bankruptcy in Plaintiff's file.  Because bankruptcy information is derived from public records that include, at a minimum, the last four digits of the social security number, LexisNexis could have eliminated Christopher Stephen Jones's bankruptcy from Plaintiff's credit file just by confirming that the last four digits of his social security number did not match Plaintiff's.  Ex. 6.  It only cost Plaintiff's counsel $0.10 to pull Ex. 6 and confirm that the bankruptcy did not belong to Plaintiff.  But LexisNexis chose not to require any matching in social security numbers, and included verifiably false information in Plaintiff's file. Accordingly, LexisNexis's procedures cannot be called reasonable beyond question, and LexisNexis is not entitled to summary judgment.

### 4. LexisNexis willfully violated the FCRA by failing to reinvestigate Plaintiff's disputes.

LexisNexis willfully violated the FCRA when it ignored and failed to reinvestigate Plaintiff's disputes.  "[I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer

notifies the agency . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate . . ." 15 U.S.C. § 1681i(a)(1)(A). The consumer reporting agency shall then "record the current status of the disputed information, or delete the item from the file . . ." within thirty days of receiving the dispute. Id. "To prevail on a § 1681i(a) claim . . . , plaintiffs must prove essentially the same elements as those for a § 1681e(b) claim—unreasonable procedures in reinvestigating a report, inaccuracy of the report, injury, and causation—in addition to proving they informed the CRA about the inaccuracy." Wright v. Experian Info. Sols., Inc., 805 F.3d 1232, 1242 (10th Cir. 2015). A CRA's failure to respond to dispute constitutes a violation of 15 U.S.C. § 1681i. Thomas v. Trans Union LLC, 197 F. Supp. 2d 1233, 1236-39 (D. Or. 2002). When a CRA fails to respond to a dispute, the maintenance of reasonable procedures to reinvestigate a credit dispute is an affirmative defense to be determined by the jury. Id. Thus, LexisNexis must demonstrate that it maintained reasonable procedures to reinvestigate disputes and was merely negligent when it failed to respond to Plaintiff's disputes.

Here, LexisNexis failed to respond at all to Plaintiff's credit disputes and has not provided the Court with its reasonable procedures for ensuring that it actually investigates disputes. On April 3, 2020, Plaintiff sent a dispute by letter to LexisNexis. (Ex. 2). Attached to his letter, Plaintiff highlighted myriad pieces of incorrect information on his LexisNexis credit file. (Ex. 2). On April 6, 2020, LexisNexis received this letter. (Ex. 3). To date, LexisNexis has not responded to the letter, conducted a reinvestigation of the erroneous information highlighted in the credit file, or done anything. By failing to conduct *any* reinvestigation, let alone a *reasonable investigation*, LexisNexis recklessly disregarded its duties under the FCRA. By completely ignoring its FCRA obligations, LexisNexis exposed Plaintiff to an unjustifiable risk of harm—that his LexisNexis credit file would continue to contain inaccurate information suggesting Plaintiff had filed bankruptcy, has multiple social security numbers, and is an unreliable credit risk.

LexisNexis's motion does not address this claim. Indeed, the motion does not mention LexisNexis's failure to reinvestigate. Moreover, the "reasonable procedures" that LexisNexis

relies upon are directed only towards LexisNexis's creation of credit reports and *not* directed at reinvestigation at all. Assuming that LexisNexis has reasonable procedures created to comply with 15 U.S.C. § 1681i(a), which LexisNexis has not presented to the Court, there is no argument that LexisNexis actually followed them because LexisNexis never responded to Plaintiff's dispute or conducted any reinvestigation. Accordingly, a reasonable juror could conclude that LexisNexis acted recklessly when it failed to respond to Plaintiff's disputes.

> **5. LexisNexis willfully violated the FCRA by failing to provide to Plaintiff a copy of his consumer file.**

LexisNexis failed to respond to Plaintiff's request for his credit file and offers no reason why it did not comply with the law. "Every consumer reporting agency shall, upon request . . . , clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request . . . ." 15 U.S.C. § 1681g(a)(1). "The purpose of the Act's disclosure requirement is to provide the consumer with an opportunity to dispute the accuracy of information in his file." Hauser v. Equifax, Inc., 602 F.2d 811, 817 (8th Cir. 1979). The failure to provide a copy of the file in response to a proper request may constitute a willful violation of the FCRA. Taylor v. Screening Reports, Inc., 294 F.R.D. 680, 687 (N.D Ga. 2013). Therefore, LexisNexis must prove that it actually complied with the statute to be entitled to summary judgment.

LexisNexis has not met its burden. LexisNexis does not specifically address Plaintiff's claim under 15 U.S.C. § 1681g. On March 17, 2020, Plaintiff requested his file by letter. (Ex. 2). On April 6, 2020, LexisNexis received that letter. (Ex. 3). LexisNexis provides no evidence that it provided its file to Plaintiff. LexisNexis offers no excuse for why it did not provide the file to Plaintiff. LexisNexis provides no policies or procedures for complying with 15 U.S.C. § 1681g. LexisNexis is not entitled to summary judgment on this claim because the only evidence before the Court is that Plaintiff requested his file from LexisNexis and LexisNexis did not respond. There is no reading of 15 U.S.C. § 1681g that would suggest that LexisNexis was merely negligent when LexisNexis ignored Plaintiff's request for his file and altogether failed to comply with the FCRA.

### 6. LexisNexis willfully violated the FCRA by selling reports about Plaintiff without a permissible purpose.

LexisNexis violated the FCRA by selling his consumer reports to third parties without a permissible purpose. A consumer reporting agency may furnish a consumer report under only the circumstances listed in 15 U.S.C. § 1681b(a) and its subsections. For the reasons listed under 15 U.S.C. § 1681b(a)(3)(A) and (C), the consumer reporting agency may furnish are report only if the report is either (1) authorized by the consumer or (2) made in connection with a firm offer of credit. 15 U.S.C. § 1681b(c)(1). "Every consumer reporting agency shall maintain reasonable procedures designed . . . to limit the furnishing of consumer reports to the purposes listed under section 1681b of this title." 15 U.S.C. § 1681e(a). A consumer reporting agency violates 15 U.S.C. § 1681b when it provides a mixed report containing the plaintiff's information. Howley v. Experian Info. Solutions, Inc., 813 F. Supp. 2d 629, 635 (D. N.J. 2011). In Howley, the court denied the defendant's motion for summary judgment when the defendant had disclosed Francis Howley's personal credit information in reports intended for creditors of Francis Firlein. Id. at 634-35. As such, LexisNexis must demonstrate that it either disclosed Plaintiff's credit reports for a permissible purpose and has reasonable procedures to prevent the impermissible disclosure of a credit report containing mixed information

Here, Plaintiff's credit file was mixed with multiple other individuals with different names and social security numbers. According to LexisNexis's file for Plaintiff, LexisNexis disclosed Plaintiff's information to Carvana, Allstate, Liberty Mutual, Progressive, and American Family. (Ex. 2).

Once again, LexisNexis has produced no evidence that it maintains reasonable procedures to prevent the impermissible disclosure of Plaintiff's credit file. The only "procedures" before the Court are for preparing reports, not for preventing impermissible disclosure. Those "procedures" say nothing about impermissible disclosure. LexisNexis has failed to submit to the Court any evidence that it maintained reasonable procedures designed to limit the furnishing of a consumer report only to those with a permissible purpose for obtaining a report under 15 U.S.C. § 1681b.

The reasonable inference is that LexisNexis failed to maintain and follow such procedures in willful disregard of its obligations under 15 U.S.C. § 1681e(a).

## VI.   CONCLUSION

LexisNexis's motion is based on two false premises.  First, LexisNexis incorrectly maintains that Plaintiff must produce corroborated evidence of emotional distress.  The Tenth Circuit in Llewellyn held that a Plaintiff's detailed affidavit of emotional distress is sufficient to put the question to the jury, and that is what Plaintiff has done here.  Second, LexisNexis incorrectly believes that it is entitled to summary judgment based upon its procedures that are (1) not included in the motion and (2) not applicable to three out of four of Plaintiff's claims.  LexisNexis has not demonstrated that its procedures are beyond question reasonable, and whether LexisNexis violated the FCRA by combining Plaintiff's information with multiple other "Christopher Joneses", failed to respond to his dispute, failed to provide Plaintiff's credit file to him, and impermissibly disclosed his credit report.  For these reasons, LexisNexis is not entitled to summary judgment.

DATED: May 24, 2021.

/s/ Matthew R. Osborne
Matthew R. Osborne
**Counsel for Plaintiff**

CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2021, the foregoing was served via CM/ECF on counsel for Defendant:

/s/ Matthew R. Osborne
Matthew R. Osborne
