IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-02496-MEH

CHRISTOPHER JONES,

    Plaintiff,

v.

LEXISNEXIS RISK SOLUTIONS INC.,

    Defendant.

_____

# ORDER
_____

**Michael E. Hegarty, United States Magistrate Judge.**

    Before the Court is Defendant's Motion for Summary Judgment. ECF 24. The matter is fully briefed, and the Court finds that oral arguments will not materially assist in its adjudication. For the following reasons and based on the submitted record, the Motion is granted in part and denied in part.

## BACKGROUND

### I. Claims for Relief

    Plaintiff alleges that he was prevented from purchasing a phone at a T-Mobile store when Defendant provided a LexisNexis Consumer Disclosure Report (the "Report") to the store, which falsely indicated that he was a credit risk. Plaintiff alleges that Defendant negligently and willfully violated 15 U.S.C. §§ 1681e(b), 1681i, 1681g, and 1681b. ECF 1-1 at ¶ 14(a)-(d). Specifically, he alleges that Defendant failed to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual" (15 U.S.C. § 1681e(b)), failed to reinvestigate the information in his file when he contacted them (15 U.S.C. §

1

1681i), disclosed his information improperly to other businesses (15 U.S.C. § 1681g), and failed to disclose his full file to him when he requested it (15 U.S.C. § 1681b).

## II.     Material Undisputed Facts

1.      Plaintiff attempted to purchase a cell phone at T-Mobile in February, 2020. He was turned down due to information contained in the Report. T-Mobile has no records regarding Plaintiff's request. ECF 27-1 at ¶ 9; ECF 34-2 at 2.

2.      Plaintiff has no history of poor credit. ECF 27-1 at ¶¶ 3-4.

3.      On February 21, 2020, Plaintiff ordered a copy of the Report, and Defendant provided Plaintiff with access to the Report. ECF 27-1 at ¶¶ 10, 12.

4.      The Report was 110 pages long and contained numerous inaccuracies and incorrect information. ECF 27-1 at ¶ 12; ECF 27 at 4, ¶ 7; ECF 34 at 4, ¶ 7.

5.      Plaintiff drafted a dispute letter with attachments challenging information contained in the Report. ECF 27-1 at ¶ 16; ECF 27-2 at 1.

6.      The dispute letter highlighted over a hundred inaccuracies in the Report, including a bankruptcy filing, multiple social security numbers, different middle names, multiple birthdates, insurance for vehicles that did not belong to Plaintiff, addresses in multiple states shared with different people whom he did not know, and an affiliation with a Lisa Berrara. ECF 27-2 at 2-111; ECF 27 at 4-5, ¶ 9; ECF 34 at 4, ¶ 9.

7.      The dispute letter requested that Defendant provide LexisNexis's file to Plaintiff. ECF 27-2 at 1.

8.      Plaintiff sent the dispute letter to Defendant via United States Postal Service two-day delivery with tracking, on April 3, 2020. ECF 27-4.

9. Defendant conducted no investigation of Plaintiff's claims. ECF 27 at 5, ¶ 13; ECF 34 at 4, ¶ 13.

10. Plaintiff's actual damages claim is limited to non-economic damages, *i.e.*, emotional distress. ECF 24-3; ECF 24 at 3, ¶ 4; ECF 27 at 3, ¶ 4.

11. Plaintiff has no medical records or other documents in support of his emotional distress damages. ECF 24-4.

12. Plaintiff has not been denied insurance coverage. ECF 24-5.

13. Defendant prepared Plaintiff's consumer report using a proprietary "dynamic" matching process to link information and documents with individuals. ECF 24-6; ECF 24 at 3, ¶¶ 7-8; ECF 27 at 3, ¶ 7-8.

14. Defendant "uses a complex set of rules and algorithms to determine what information appears on a consumer report that has been tested and improved over decades." ECF 24-7; ECF 24 at 3; ECF 27 at 3.

## LEGAL STANDARD

### I. Fed. R. Civ. P. 56(c)

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). A court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis

for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in the complaint but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247–48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324).

"[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## ANALYSIS

I.  **Negligence Supported by Emotional Distress**

    a.  **Corroboration of Emotional Distress**

Defendant argues that Plaintiff's assertions of emotional damages are uncorroborated and therefore insufficient to prove actual damages. ECF 24 at 7. Plaintiff responds by attaching an affidavit declaring, among other things, that he suffered emotional distress because of Defendant's actions. ECF 27-1 at ¶¶ 18-22.

In order to support a negligence claim under the FCRA, Plaintiff must show that he suffered actual damages as a result of Defendant's actions. *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1183 (10th Cir. 2013). Plaintiff's actual damages are limited in this case to non-economic damages, *i.e.*, emotional distress. ECF 24-3; ECF 24 at 3; ECF 27 at 3. Allegations of emotional distress can be supported solely by a plaintiff's affidavit, but only if the affidavit sets out "detailed and specific testimony" to support his claim for damages. *Llewellyn*, 711 F.3d at 1183 (recognizing the sufficiency of an affidavit which incorporated medical records, medical history, and articulated severe symptoms, including recurring nausea, panic attacks, severe kidney pain, particular joint pains, fever, and chills.) Such an affidavit must "explain [the] injury in reasonable detail and not rely on conclusory statements." *Id.*

*Llewellyn* also looked favorably at decisions from other circuits that held claims of emotional damages supported only by affidavits to a high standard of particularity. *Id.* at 1182 (citing *Robinson v. Equifax Info. Servs.*, LLC, 560 F.3d 235, 242 (4th Cir. 2009) (concluding that the plaintiff "sufficiently articulated and demonstrated . . . emotional distress" where she "presented evidence that her mental distress manifested itself as headaches, sleeplessness, skin acne, upset stomach, and hair loss") and *Bagby v. Experian Info. Sols., Inc.*, 162 F. App'x 600,

605 (7th Cir. 2006) (noting that the plaintiff's allegations that she "stresses, gets tension headaches, and clashes with her fiancé over her credit problems, [were], at most, self-serving and conclusory statements about her emotional distress")). Affidavits supporting emotional damages are held to this high standard because "emotional distress [is] fraught with vagueness and speculation, [and] it is easily susceptible to fictitious and trivial claims." *Robinson*, 560 F.3d at 241. A plaintiff must offer more than a generalized statement of distress for a damages claim to survive summary judgment.

If the affidavit is insufficient, the absence of corroboration, while not necessarily fatal to a plaintiff's claim, weighs heavily against it, "unless the facts underlying the case are so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action." *Id.* at 1182 (citing *Bagby*, 162 F. App'x at 605). The circumstances in this case are not so degrading that the Court can reasonably infer emotional distress. *Dill v. City of Edmond*, 155 F.3d 1193, 1209 (10th Cir. 1998) (denying the inherent degradation of a situation despite the plaintiff's statements that it was "very upsetting," that everything he worked for "was taken away," and certain people ceased associating with him). Because the Court does not infer emotional distress, Plaintiff's argument for actual damages rests solely on his affidavit.

### b. Insufficiency of Plaintiff's Affidavit

Plaintiff's affidavit states that he was embarrassed, frustrated, "infuriated," and "felt hopeless." ECF 27-1 at ¶¶ 18-20. Plaintiff further attests that Defendant's actions caused him stress, anxiety, and difficulty sleeping. *Id.* Compared with *Llewellyn*, Plaintiff's affidavit is insufficient and conclusory. The *Llewellyn* court emphasized how the plaintiff described with specificity his medical history, the state of his health at the time of the defendant's actions, and

6

the physical and mental symptoms that the defendant's actions allegedly triggered. 711 F.3d at 1183-82 ("It is reasonable to infer from the aggravation of Plaintiff's previously managed conditions and the development of several new symptoms at precisely the time Plaintiff discovered the negative reports on his credit report that the Ocwen Defendants' actions caused these forms of emotional damages.").

In this case, Plaintiff alleges only generic emotional responses, without the "factual enhancement" necessary to move an allegation from conclusory to sufficient. *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021). Plaintiff provides no details regarding any physical manifestations of his symptom. He reports no history of these symptoms or a lack thereof. He does not describe the degree, severity, or pervasiveness of his mental health symptoms with sufficient detail, and he does not illuminate the exact timeline of any such symptom's development or duration. While none of these facts are required, their absence is enough to make the affidavit conclusory in nature. These factors were the primary declarations relied upon by the Court in *Llewellyn* to determine that affidavit to be sufficient. 711 F.3d at 1182.

Plaintiff's affidavit is similar to the one rejected by the court in *Gissler v. Pa. Higher Educ. Assistance Agency*, No. 16-cv-01673-PAB-MJW, 2017 WL 4297344 (D. Colo. Sep. 28, 2017). That affidavit contained very similar statements to the affidavit submitted here and described nearly identical emotional reactions. Yet *Gissler*'s claim was denied on summary judgment, indicating that the affidavit alone was insufficient to support the plaintiff's non-economic damages. Although that analysis is not binding on this Court, it is persuasive, and it adds insight into the decision in *Llewellyn*, urging that when only an affidavit supports emotional damages, it must contain specific facts and details to enhance the bare allegations.

7

While the support provided by the affidavit in this case falls somewhere between the sufficiency of *Llewellyn*, and the insufficiency of *Gissler*, the Court finds that it is more alike to the latter. The Court recognizes that the affidavit in this case does contain more background details surrounding the event triggering the emotional reactions than the affidavit in *Gissler*. This may be sufficient to show a causal nexus between receiving the Report and Plaintiff's emotional response, but it still falls short of the detail and specificity required to show emotional distress. *Llewellyn*, 711 F.3d at 1182 (recognizing that a plaintiff's affidavit must support both the existence of emotional distress, and that defendant's actions were the cause of that emotional distress).

Because of its factual similarity to the affidavit in *Gissler*, and the absence of the factors relied upon in *Llewellyn*, the Court finds that Plaintiff's affidavit does not show a genuine issue of material fact as to emotional damages. Therefore, Plaintiff's claims of negligent violations of the FCRA are not backed by actual damages, and all four must be dismissed.

## II.     Reasonable Measures to Ensure Accuracy

Plaintiff asserts that Defendant willfully and negligently violated 15 U.S.C. § 1681e(b). That statute states, "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." The four-part test for a claim under 15 U.S.C. § 1681e(b) requires "that (1) the consumer reporting agency failed to follow reasonable procedures to assure the accuracy of its reports; (2) the report in question was, in fact, inaccurate; (3) the plaintiff suffered an injury; and (4) the consumer reporting agency's failure caused the plaintiff's injury." *Cassara v. DAC Servs.*, 276 F.3d 1210, 1217 (10th Cr. 2002).

Plaintiff's negligence claim cannot survive without actual damages. "[H]owever, the consumer need not prove actual damages if the violation is willful, but may recover punitive damages and statutory damages ranging from $100 to $1,000." *Birmingham v. Experian Info. Sols., Inc.*, 633 F.3d 1006, 1009 (10th Cir. 2011). To proceed on a willfulness claim, Defendant must have committed "either an intentional violation or a violation committed . . . in reckless disregard of its duties under the FCRA." *Llewellyn*, 711 F.3d at 1183. "Recklessness is measured by an objective standard: action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id*. Defendant's duty under the FCRA is to "follow reasonable procedures to assure maximum possible accuracy." 15 U.S.C. § 1681e(b). Therefore, Plaintiff must show that there is a genuine dispute of material fact as to whether Defendant recklessly failed to follow reasonable procedures to assure the accuracy of consumer disclosures. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 (2007) ("[A] company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.")

In response to Plaintiff's allegations that its procedures are unreasonably insufficient to ensure maximum accuracy, Defendant provides an overview of its system for linking records and individuals.

> [R]ecords with intersecting data points are linked together by LexisNexis patented Scalable Automated Linking Technology and are then assigned the same LexID. A LexID is a unique identifier assigned to each record acquired by LNRS. Identity profiles are continuously updated to ingest new records. This dynamic process paints an extremely accurate picture that accounts for identity changes over time. Based on the inquiry data and LexID, LNRS' database will retrieve all the relevant data then "score" the data to determine what information is ultimately included in a consumer disclosure provided to a user. Based on this proprietary matching process, LNRS prepared Plaintiff's consumer disclosure.

9

ECF 26-6. Plaintiff criticizes the lack of specificity and detail in Defendant's description of its standard procedures. Plaintiff points out that Defendant does not disclose how intersecting data points are linked together, nor what "score" is required in order to qualify information for inclusion. He further alleges that this statement of Defendant's procedures incorrectly portrays the process as "extremely accurate," given the multiplicity of inaccuracies in the Report. However, Plaintiff erroneously suggests that the burden of persuasion lies with Defendant to prove the objective reasonableness of its procedures. Because Plaintiff would ultimately bear the burden of persuasion at trial, he must show that a genuine issue exists whether Defendant's standard procedures are insufficient to survive judgment. *Cassara*, 276 F.3d at 1212 ("To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case.") (quoting *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)). Therefore, Defendant need not proffer evidence of the general reasonableness of a procedure unless Plaintiff has specifically questioned or challenged that procedure.

Plaintiff attempts to challenge the reasonableness of Defendant's low bar for matching social security numbers. Plaintiff suggests that Defendant's practice of matching records together without requiring a "9-for-9" match of social security numbers is unreasonable. According to Plaintiff, requiring even a single-digit match would be preferrable to Defendant's current practice. In this case, applying such as standard would have removed data points related to a bankruptcy which Plaintiff alleges was filed by a different Christopher Jones, along with many other allegedly erroneous data entries. Defendant argues that its social security number matching policy cannot be reckless, as described in the statute, because no authority has declared that the practice or procedure is unreasonably risky or is "so obvious that it should be known" to be unreasonably risky. *Birmingham*, 633 F.3d at 1009 (citing *Safeco Ins. Co. of Am.*, 551 U.S. at

70). Indeed, Defendant argues that a "9-for-9" policy is not only widely rejected by industry standards, but is also an unworkable practice, given the absence of social security numbers on many public documents.

Even if Plaintiff's suggested "9-for-9" approach was viable, his argument still does not support a willful violation claim. Plaintiff's burden under a willfulness standard is to point to an insufficient practice on the part of the Defendant. Proffering an alternative practice, or even an objectively superior practice, would not lead the Court to infer that the procedures Defendant has in place are reckless or willfully unreasonable. Defendant's failure to increase accuracy by matching social security numbers might be negligently unreasonable, but that same argument is insufficient to prove willful unreasonableness. Plaintiff cites no authority showing that a failure to match social security numbers, instead of other linked data points, is a "known" risk of harm, nor does he demonstrate that Defendant's policies are consistent with a reading of the FCRA that is more than "merely careless." *Id.* at 69.

Plaintiff also points to Defendant's lack of practices meant to exclude or reconcile conflicting information from individual files. Plaintiff relies on *Gomez v. Kroll Factual Data, Inc.*, 20 F. Supp. 3d 1103, 1107 (D. Colo. 2013) to argue that such a measure is something a "juror could conclude that a reasonably prudent person would take . . . to assure the maximum accuracy of consumer reports." However, Plaintiff misconstrues *Gomez*'s fact-pattern. While the defendant in *Gomez* did not have a policy for cross-checking or screening inaccurate data, there were no additional policies beyond the mere matching of the name on a file. In other words, the defendant in that case used no other data points except names to match records to individuals. *Id.* at 1108 ("Defendant does not use other items of an applicant's personal information, such as the applicant's date of birth, address, and social security number to exclude the applicant as a

possible hit to the OFAC list."). It was this total failure to cross-reference and exclude conflicting information that the court concluded was appropriate for a jury. Furthermore, that analysis was made in the face of a motion to dismiss, rather than a motion for summary judgment, and relied upon decisions made in the context of a negligent violation of the FRCA, rather than a willful violation. *Id.* (citing *Eller v. Experian Info. Sols., Inc.*, No. 09-cv-00040-WJM-KMT, 2011 WL 3365955 (D. Colo. May 17, 2011)). In this case, Plaintiff does not show that Defendant totally fails to cross-reference using any information beyond names. Instead, Plaintiff's disclosure shows that multiple data points may link a document to an individual. When analyzed under the standards for a willful violation on a motion for summary judgment, rather than a negligent violation on a motion to dismiss, these facts do not warrant the same treatment as the facts in *Gomez*.

Additionally, Plaintiff proffers the errors in the Report as evidence that Defendant does not maintain reasonable procedures to exclude inaccurate information. However, the fact that one report contained inaccuracies, even if to an extreme degree, is not enough to reverse engineer a blueprint of Defendant's general policies. Liability for a willful violation of Section 1681e(b) cannot rest only on inaccuracies that could be unique to one consumer. Instead, Plaintiff must show a *practice* which would broadly affect consumers in order to show a willful FCRA violation. *Birmingham*, 633 F.3d at 1012. Plaintiff claims that Defendant's "failure to describe how it avoids mismatches is a concession that it has [no practice for doing so]." ECF 27 at 11. However, Defendant need not "demonstrate that its procedures are reasonable beyond question," in order to succeed on its Motion, as Plaintiff suggests. Instead, Plaintiff must show a genuine dispute as to whether Defendant's particular policy presents a known risk or a risk that is so obvious that it should be known. Other than *Gomez*, which is disanalogous, Plaintiff does not

provide authority recognizing the known risk, nor does he show how the practice is a risk substantively greater than a "careless" reading of Section 1681e(b). Plaintiff's only evidence of Defendant's allegedly insufficient policies are the inaccuracies in the Report. Absent any evidence of more widespread errors, this is not a material dispute implicating that Defendant's procedures are willfully in violation of the FCRA's mandate to maintain reasonable procedures.

None of Plaintiff's arguments demonstrate a genuine issue of material fact as to whether Defendant's practices are willfully violative of Section 1681e(b). Defendant's data matching policy does not present a known or obvious or risk of harm, nor does *Gomez* provide grounds to suggest that its screening policies are willfully unreasonable. Therefore, Plaintiff's claim for a willful violation of 15 U.S.C. § 1681e(b) is dismissed.

### III.     Improper Disclosure of Information

Plaintiff alleges that Defendant violated 15 U.S.C. § 1681b by disclosing information to Carvana, State-Farm, and others outside the parameters of permitted disclosures. Defendant considers these alleged disclosures immaterial because there are no economic damages to support a negligence claim and no allegations of any willful violation of the statute.

Because damages are an essential element of a claim for negligence, Plaintiff cannot support an argument for a negligent violation of 15 U.S.C. § 1681b. Therefore, all that remains under that statute is Plaintiff's willfulness claim. Defendant's duty under the FCRA is to disclose the Report "under [specified] circumstances and no other." 15 U.S.C. § 1681b. If there is a genuine dispute regarding whether Defendant improperly disclosed the Report to third parties either intentionally or in reckless disregard of its duty only to disclose under permissible circumstances, Plaintiff's claim survives summary judgment.

Plaintiff identifies multiple disclosures in his dispute letter (ECF 28 at 78-80), which he denies ever requesting. ECF 27-1 ¶ 21. Neither party alleges that Defendant was acting under 15 U.S.C. § 1681b(c), which allows for disclosures not initiated by Plaintiff in limited circumstances. However, Plaintiff makes no factual allegation that Defendant, if adhering to its established procedures, would have been aware the disclosures were improper, or that disclosing the information "entail[ed] an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Llewellyn*, 711 F.3d at 1183. If the Report was disclosed in response to a request by a different individual named Christopher Jones, as Plaintiff suggests, Defendant may have believed that it was responding to a legitimate request initiated by the consumer. There is no evidence in the record, nor any factual dispute, which might suggest that Defendant knew of a risk, or that there was an obvious risk, associated with the disclosure of the Report to those third-parties.

If Defendant's procedures in preparing the Report were willfully unreasonable, and the Report was disclosed in response to a different Christopher Jones as a result, Plaintiff may have been able to prove that the disclosures were a willful violation of the FCRA. Because the Court does not consider Defendant's policies to be in willful violation of the FCRA, the improper disclosures were at most negligent, a claim which is unsupported by actual damages. Plaintiff's claim of a willful violation of 15 U.S.C. § 1681b is insufficient to create an actual dispute of material fact, and therefore it is dismissed.

**IV.     Dispute Letter**

Plaintiff alleges that he sent Defendant a dispute letter via certified mail on April 3, 2020. In support of his allegation, Plaintiff attaches documentation of his certified mail receipt, as well as confirmation of the dispute letter's arrival. Defendant denies possessing any record of

receiving such a letter. However, the role of the Court on a Motion for Summary Judgment is not to weigh evidence or arguments, but only to determine whether a material fact is genuinely in dispute. The Courts finds that the parties genuinely dispute whether Defendant received the letter and therefore had the requisite knowledge to support willful violation, particularly when "[t]he [C]ourt views the record and draws all inferences in the light most favorable to the non-moving party," *Pepsi-Cola Bottling*, 431 F.3d at 1255. Discovery and pleadings do not resolve whether Defendant received the dispute letter, so the Court does not render a determination whether Defendant willfully failed to reinvestigate Plaintiff's claims, or to deliver his full file to him.[1]

       This is because Section 1681i(a) states "if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency . . . of such dispute, the agency shall, free of charge, conduct a reasonable investigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A). To prove a claim that Defendant failed to reinvestigate the Report, Plaintiff must show "unreasonable procedures in reinvestigating a report . . . in addition to proving [he] informed the CRA about the inaccuracy." *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1242 (10th Cir. 2015). Proving these elements would require a factual finding as to whether Defendant received Plaintiff's dispute letter. Similarly, it is impossible to know if Defendant willfully failed to deliver Plaintiff's file as he requested without determining whether or not his request for his complete file, contained in his dispute letter, was actually received. Therefore, the Court finds that summary judgment on Plaintiff's willfulness claims under Sections 1681i and 1681g is inappropriate.

---

1. The dispute letter does not create an issue of material fact under 15 U.S.C. § 1681b for improper disclosures. Plaintiff did not discover the inaccuracies in the Report, nor did he write his dispute letter, until after the improper disclosures had occurred. Whether or not Defendant received the dispute letter is immaterial to Plaintiff's claim under 15 U.S.C. § 1681b.

## **CONCLUSION**

Plaintiff's claim for a negligent violation of the FCRA cannot stand without actual damages, even if Defendant's conduct would otherwise satisfy that claim. The affidavit supplied by Plaintiff in support of his emotional damages is not specific or detailed enough to prop up his claim alone. Similarly, Plaintiff's failure to point to specific failings and insufficiencies in Defendant's policies and procedures, which would constitute a risk of harm so great that it was known or should have been known, is fatal to his claims for willful violations Sections 1681b and 1681e(b). The factual dispute regarding the receipt of Plaintiff's dispute letter is material to any resolution of Plaintiff's claims for willful violations of Section 1691i and 1681g, and cannot be resolved on summary judgment.

Accordingly, Defendant's Motion for Summary Judgment [filed April 26, 2021; ECF 24] is **granted** in part with respect to Plaintiff's negligence claims, as well as his claim for relief stemming from a willful violation of 15 U.S.C § 1681e(b). It is **denied** in part with respect to Plaintiff's claims regarding Defendant's alleged willful inaction on his dispute letter in violation of 15 U.S.C. §§ 1691i and 1681g.

Entered this 30th day of July, 2021, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge